**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **I M BORDEN GROUP LLC**<br>A Pennsylvania Limited Liability Company<br>301 Elmwood Avenue<br>Reading, PA 19609 | : | CIVIL ACTION NO.<br>JURY TRIAL DEMANDED |
| Plaintiff | : | |
| vs. | : | |
| **P & YF ENTERPRISES, Inc.**<br>A New Jersey Corporation<br>125 Stevens Road<br>Toms River, NJ 08755 | : | |
| and | : | |
| **YOSSI FLAX**<br>125 Stevens Road<br>Toms River, NJ 08755 | : | |
| and | : | |
| **ELIE FLAX**<br>125 Stevens Road<br>Toms River, NJ 08755 | : | |
| and | : | |
| **Singh & Daughters, LLC**<br>A New York LLC<br>533 Blanche Court<br>Henderson, NV 89052 | : | |

and

**Mandeep Singh**
533 Blanche Court
Henderson, NV 89052

and

**Solaryna Energy**
A California Corporation
1750 California Avenue
Suite 109
Corona, CA 92881

and

**Frank Sawaf**
1750 California Avenue
Suite 109
Corona, CA 92881

and

**Tesla Energy**
A Texas Corporation
7425 Hightower Drive
North Richland Hills, TX 76183

and

**David Hijorth**
7425 Hightower Drive
North Richland Hills, TX 76183
Defendants

# COMPLAINT

**AND NOW COMES, I M BORDEN GROUP LLC ("IMBG"),** by and through its attorney Joseph A. Caprara, Esquire, filing the following Complaint against all of the below named Defendants and in support thereof avers as follows:

## NATURE OF THE ACTION

1. IMBG is a Pennsylvania Limited Liability Company that purchases and resells personal protection equipment ("PPE") throughout the United States for protection against infection, including COVID-19. Its customers include hospitals, nursing homes, first responders, physicians, nurses, places of business that require PPE and governmental agencies, such as city and state offices and organizations.

2. Defendants P & YF Enterprises, Inc., Singh & Daughters, LLC, Tesla Energy and Solaryna Energy (The "Enterprise Defendants") are a chain of companies that hold themselves out as manufacturers/suppliers/procurers of the PPE which IMBG purchases and then sells.

3. Defendants, Yossi Flax, Elie Flax, Mandeep Singh, Frank Sawaf, and David Hijorth ("Individual Defendants") are the owners, officers and/or principals who profit from each or all of the above Enterprise Entities.

4. On at least three separate occasions beginning in November of 2020 through December of 2020 Plaintiff purchased from the Enterprise Defendants what

were purported to be authentic 3M 1860 & 1860S N95 masks to be supplied to customers of the type listed above.

5. After the three separate purchases and full payment for the masks, which totals $324,087.00, Plaintiff delivered the masks to the end users. Shortly thereafter IMBG was informed that the masks were in fact copies, fraudulent and not sourced from 3M Company as represented.

6. Upon investigation, Plaintiff ascertained that the Individual Defendants, acting through the Enterprise Defendants, engaged in a pattern of fraudulent activity designed to reap illegal profits from this pattern of conduct, utilizing the Enterprise Defendants as their conduit.

## PARTIES

7. Plaintiff I M Borden Group LLC ("IMBG") is a Pennsylvania Limited Liability Company with its principal place of business at 301 Elmwood Avenue in Reading, Pennsylvania.

8. P & YF Enterprises, Inc. is an enterprise engaged in activities which affect interstate commerce to wit: A Corporation incorporated under the laws of the State of New Jersey with its principal place of business at 125 Stevens Road, Toms River, New Jersey.

9. Defendant Yossi Flax is a person within the meaning of 18 U.S.C. §1961(3) employed by or associated with P & YF Enterprises, Inc. who conducted and

participated, directly or indirectly in the conduct of the affairs of P & YF Enterprises, Inc. through a pattern of racketeering activity in violation of 18 U.S.C. §1962(c).

10. Defendant Elie Flax is a person within the meaning of 18 U.S.C. §1961 (3) employed by or associated with P & YF Enterprises, Inc. who conducted and participated, directly or indirectly in the conduct of the affairs of P & YF Enterprises, Inc. through a pattern of racketeering activity in violation of 18 U.S.C. §1962(c).

11. Singh & Daughters, LLC is an enterprise engaged in activities which affect interstate commerce to wit: A Limited Liability Corporation incorporated under the laws of the State of Nevada with its principal place of business at 533 Blanche Court, Henderson, Nevada.

12. Defendant Mandeep Singh is a person within the meaning of 18 U.S.C. §1961 (3) employed by or associated with Singh & Daughters, LLC who conducted and participated, directly or indirectly in the conduct of the affairs of Singh & Daughters, LLC through a pattern of racketeering activity in violation of 18 U.S.C. §1962(c).

13. Solaryna Energy is an enterprise engaged in activities which affect interstate commerce to wit: A Corporation incorporated under the laws of the State of California with its principal place of business at 1750 California Avenue, Suite 109, Corona, California.

14. Defendant Frank Sawaf is a person within the meaning of 18 U.S.C. §1961 (3) employed by or associated with Solaryna Energy who conducted and participated, directly or indirectly in the conduct of the affairs of Solaryna Energy through a pattern of racketeering activity in violation of 18 U.S.C. §1962(c).

15. Tesla Energy is an enterprise engaged in activities which affect interstate commerce to wit: A Corporation incorporated under the laws of the State of Texas with its principal place of business at 7425 Hightower Drive, North Richland Hills, Texas.

16. Defendant David Hijorth is a person within the meaning of 18 U.S.C. §1961 (3) employed by or associated with Tesla Energy who conducted and participated, directly or indirectly in the conduct of the affairs of Tesla Energy through a pattern of racketeering activity in violation of 18 U.S.C. §1962(c).

## JURISDICTION AND VENUE

17. This Court has original jurisdiction over the subject matter of this action pursuant to 18 U.S.C.A. §§1961-1968, known as the Racketeer Influenced and Corrupt Organization Act ("RICO").

18. This Court also has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332 in that complete diversity of citizenship exists between the Plaintiff on the one hand and the Defendants on the other hand, and the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.

19. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331and over the pendent State law claims pursuant to28 U. S. C. §1367.

20. Venue in this action is proper in this Court pursuant to 28 U.S.C. §1391(b) in that Plaintiff has its principal place of business in this judicial district and this case concerns a contract entered into in this judicial district.

## FACTUAL BACKGROUND

21. Plaintiff IMBG is a Pennsylvania LLC engaged in the interstate purchase and sales of PPE.

22. The PPE purchased by Plaintiff must be manufactured to strict tolerances to protect the health, safety and welfare of the people who ultimately utilize these items to protect themselves and others from infectious diseases, including COVID-19.

23. The efficacy of the PPE is paramount to the persons who rely upon them each time the article of PPE is utilized.

24. In conducting its business IMBG only purchased PPE from providers who guarantee and represent that the necessary standards, tolerances and protections of their products exist, and that they were manufactured by approved companies, such as 3M.

25. In obtaining the necessary PPE to be sold to its customers, IMBG requires that the PPE (in this instance N95 masks) be verified by its providers as having been manufactured, guaranteed and warranted by approved companies, such as 3M.

26. From October through December of 2020 IMBG purchased, on three separate occasions "authentic 3M 1860 N95 masks", in some instances utilizing Purchase Orders to the Enterprise Defendant P & YF Enterprises, Inc. (see Exhibit "A"). (The "Allegedly Authentic Masks").

27. The Allegedly Authentic Masks were purchased from Defendant P & YF Enterprises, Inc. on November 10, 2020, November 19, 2020 and December 29, 2020.

28. Upon purchase of the Allegedly Authentic Masks, Plaintiff IMBG wired funds in the amount of $68,535.00 on November 10, 2020; $63,800.00 on November 19, 2020, $160,000.00 on November 20,2020 and $31,752.00 on December 29, 2020. (see Exhibit "B").

29. Shortly after the third purchase of the Allegedly Authentic Masks Plaintiff was informed by one of its customers that the lot numbers of the N95 masks that had been delivered to that customer had been independently identified as fake and fraudulent.

30. Upon review by Plaintiff, it was discovered that all three of the purchases of the Allegedly Authentic Masks were designated by Defendants to have been manufactured in the same lot number, which had been identified as fake and fraudulent by the 3M Company.

31. Upon discovering that the Allegedly Authentic Masks that had been purchased were fake and fraudulent, Plaintiff contacted P &YF Enterprises, Inc. to ascertain whether Defendant could evidence that they were, in fact, authentic.

32. Despite multiple inquiry by Plaintiff, P & YF Enterprises, Inc. was unable and/or refused to verify the authenticity of the Allegedly Authentic Masks.

33. Upon further investigation Plaintiff discovered that P & YF Enterprises, Inc. was part of a nationwide organization that was counterfeiting and selling fake and fraudulent 3M 1860 and 1860S N95 masks.

34. This enterprise was conducted by P & YF Enterprises, Inc. who was but one link in a chain of distribution of fake and fraudulent PPE that was designed to elude, evade and confuse the ultimate purchasers from determining who had manufactured or sourced the Allegedly Authentic Masks.

35. Upon further investigation, Plaintiff uncovered the fact that P & YF Enterprises, Inc. had obtained the Allegedly Authentic Masks from Tesla Energy; who had obtained the Allegedly Authentic Masks from Sing & Daughters LLC, who had obtained the Allegedly Authentic Masks from Solaryna Energy.

36. Upon discovery that the masks were not authentic, Plaintiff notified its customers to prevent any harm from occurring from their use. To the best of Plaintiff's knowledge, none of the Allegedly Authentic Masks were used prior to the discovery that they were fake or fraudulent.

37. As a result of the above activities of the Defendants, Plaintiff suffered losses in the full amount of the purchase price of these masks, which are not fit for their intended use.

## COUNT I

**RACKETEER INFLUENCE AND CORRUPT ORGANIZATIONS ("RICO") AGAINST ALL DEFENDANTS**

38. Plaintiff herein incorporates Paragraphs 1 through 37 as though set forth at length.

39. The three predicate acts which constitute this pattern of racketeering activity are:

A. The sale on November 10, 2020 to Plaintiff of 16,240 fake and fraudulent N95 masks for a total charge of $68,5353.00.

B. The sale on November19 &20, 2020 to Plaintiff of 60,000 fake and fraudulent N95 masks for a total charge of $223,800.00.

C. The sale on December 29, 2020 to Plaintiff of 10,080 fake and fraudulent N95 masks for a total charge of $31,752.00.

40. These three acts of racketeering, occurring within ten years of one another, constitute a pattern of racketeering activity within the meaning of 18 U.S.C.A. § 1961(5).

41. Plaintiff was injured in its business or property by reasons of this violation of 18 U.S.C.A. § 19621, in that, as a direct and proximate result of Defendants complained of acts, Plaintiff suffered damages, including monetary damages, in the amount of $324,087.00.

42. By reason of the Defendants' violation of 18 U.S.C.A. § 1962, Plaintiff is entitled, pursuant to 18 U.S.C.A. § 1964(c), to threefold damages sustained or $972,261.00, with interest thereof, and a reasonable attorney's fee in connection therewith.

**WHEREFORE,** Plaintiff prays for judgment against all Defendants, and each of them, jointly and severally as follows:

(1) For threefold the damages actually sustained and the costs of suit, in a sum not less than $972,261.00 including a reasonable attorney's fee, pursuant to 18 U.S.C.A. § 1964(c) with interest thereon.

(2) For such other and further relief as the Court may deem appropriate pursuant to 18 U.S.C.A. § 1964, and

(3) For such other and further relief as the Court may deem proper and just.

# COUNT II

## CIVIL CONSPIRACY AGAINST ALL DEFENDANTS

43. Plaintiff herein incorporates Paragraphs 1 through 42 as though set forth at length.

44. Both the Enterprise Defendants and the Individual Defendants acted with the common purpose and intent of selling interstate PPE that was advertised, guaranteed, and warranted as safe and manufactured from an approved and authorized manufacturer to third parties, when in fact the PPE was fake, fraudulent, untested and potentially dangerous.

45. In furtherance of this concerted activity the Defendants engaged in a chain of manufacturing, sale and distribution for the purpose of reaping illegal profits from this unlawful activity through the Enterprise Defendants.

46. In furtherance of this activity the Defendants ultimately sold the fake and fraudulent PPE to Plaintiff on the dates and in the amounts and for the sums set forth above in this Complaint.

47. Because the PPE sold to Plaintiff is fake, fraudulent and potentially dangerous it cannot be introduced into the health care communities, or even the general

population where it is intended to be utilized, because it is useless and potentially dangerous.

48. As a result of the concerted activities by these Defendants Plaintiff has lost the amount of $324,087.00 paid to these Defendants.

**WHEREFORE,** Plaintiff seeks damages in the amount of $324,087.00 and such other relief as the Court deems just and proper.

## COUNT III

### FRAUD AGAINST ALL DEFENDANTS

49. Plaintiff incorporates Paragraphs 1 through 48 as though set forth at length.

50. Defendants represented to Plaintiff that they were selling Plaintiff authentic 3M 1860 N95 masks on each occasion set forth above in this Complaint.

51. That representation that the 3M masks were authentic was material and in fact critical to the transaction at hand, as these items would be used to protect the health, safety and welfare of health workers, patients, first responders, etc.

52. That representation that Defendants were selling authentic 3M 1860 N95 masks was made falsely, with knowledge of its falsity or recklessness as to whether it was true or false by all Defendants.

53. That representation that Defendants were selling, and Plaintiff was buying, authentic 3M 1860 N95 masks were made with the intent of misleading Plaintiff and others into relying on it for paying the price that was ultimately agreed upon.

54. Plaintiff was justified in relying upon the representations of the Defendants who intentionally forged, altered, or otherwise sought to utilize apparently authentic documents to convince Plaintiff the PPE being purchased was authentic.

55. As a result of the above activities of the Defendants, Plaintiff was injured and damaged in the amount of $324,087.00.

**WHEREFORE,** Plaintiff demands judgment against the Defendants in the amount of $324,087.00, and punitive damages in the amount to be determined by this Court and be such other relief as the Court may deem just and proper.

## COUNT IV

### BREACH OF CONTRACT AGAINST P & YF ENTERPRISES, INC.

56. Plaintiff incorporates Paragraphs 1 through 55 as though set forth at length.

57. On the dates and in the amounts set forth previously in this Complaint, Plaintiff purchased what it believed to be authentic 3M 1860 N95 masks.

58. In fact Plaintiff was sold fake and fraudulent masks that were not manufactured by 3M and could not be safely utilized by any of the customers of Plaintiff.

60. The terms and prices agreed upon and paid by Plaintiff were set forth in the purchase orders and verified by the wire transfers attached hereto and identified as Exhibits to this Complaint.

61. Defendant's failure to provide authentic 3M 1860 N95 masks as agreed upon represented a material breach of the contract between the parties and nullified the value of the merchandise to Plaintiff.

**WHEREFORE,** Plaintiff demands judgment against P & YF ENTERPRISES, Inc. in the amount of $324,087.00, as well as such other relief as the Court deems proper.

Respectfully submitted,

Date: March 25, 2021

/S/ JOSEPH A. CAPRARA
JOSEPH A. CAPRARA, ESQUIRE
Attorney for Plaintiff
I M BORDEN GROUP LLC

**VERIFICATION**

I, Ian Borden, hereby state that I am the president of I M Borden Group, LLC, the Plaintiff in the above matter and am authorized to make this Verification on behalf of Plaintiff, and the statements made in this Complaint are true and correct to the best of my information, knowledge and belief.

I understand that the statements made in this Verification are subject to the penalties of 28 U.S.C. § 1746 relating to unsworn falsifications to authorities.

Dated: March 24, 2021

IAN BORDEN, ON BEHALF OF
I M BORDEN GROUP, LLC